UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH CHABOT,

                                Plaintiff,

          v.

COUNTY OF ROCKLAND, NEW YORK;
BOARD OF ELECTIONS IN THE COUNTY OF
ROCKLAND; PATRICIA GIBLIN, in her official
and individual capacity; KRISTEN ZEBROWSKI
STAVISKY, in her official capacity; and John and
Jane Does 1–5,

                           Defendants.

No. 18-CV-4109 (KMK)

OPINION & ORDER

Appearances:

John G. Stepanovich, Esq.
Stepanovich Law P.L.C.
Virginia Beach, VA
*Counsel for Plaintiff*

Matthew G. Parisi, Esq.
Bleakley Platt & Schmidt, LLP
White Plains, NY
*Counsel for Defendant County of Rockland*

Jarrett M. Behar, Esq.
Sinnreich Kosakoff & Messina LLP
Central Islip, NY
*Counsel for Defendant Patricia Giblin*

Lisa A. Perillo, Esq.
Forchelli, Deegan & Terrana LLP
Uniondale, NY
*Counsel for Defendant Patricia Giblin*

Daniel S. H. Szalkiewicz, Esq.
Faga Savino, LLP
White Plains, NY

*Counsel for Defendants Board of Elections for the County of Rockland and Kristen Zebrowski Stavisky*

KENNETH M. KARAS, District Judge:

Plaintiff Joseph Chabot ("Plaintiff") brings this Action against the County of Rockland, New York (the "County"), the Board of Elections for the County of Rockland ("BOE"), BOE Commissioner Patricia Giblin ("Giblin"), and BOE Commissioner Kristen Zebrowski Stavisky ("Stavisky") (collectively "Defendants"), pursuant to 42 U.S.C. § 1983, alleging that Defendants retaliated against him by terminating his employment in violation of the First and Fourteenth Amendments, and New York state constitutional and election law. (*See* Second Am. Compl. ("SAC") (Dkt. No. 55).)[1] Before the Court are Defendants' Motions To Dismiss. (County Not. of Mot. (Dkt. No. 64); Giblin Not. of Mot. (Dkt. No. 71).) For the following reasons, Defendants' Motions are granted in part and denied in part.

## I. Background

### A. Factual Background

The facts recounted below are taken from Plaintiff's SAC and are assumed to be true for purposes of resolving the Motions.

#### 1. Plaintiff's Employment

At all relevant times, Plaintiff was employed as a "Clerk III employee, a Republican," with the BOE. (SAC ¶ 10.) The BOE consists of two Commissioners. (*Id.* ¶ 18.) Plaintiff was hired by BOE in November 2014. (*Id.* ¶ 38.) He began his employment at the BOE in the capacity of a Clerk III with the consent of BOE Commissioner Stavisky, a registered Democratic

---

[1] In his initial Complaint, (Compl. (Dkt. No. 10)), and in his First Amended Complaint ("FAC"), (FAC (Dkt. No. 46)), Plaintiff also named Edwin J. Day ("Day"), the Rockland County Executive, as a Defendant. Plaintiff does not state any claims against Day in his SAC.

Party Member, and former BOE Commissioner Louis C. Babcock, a registered Republican Party Member.  (*Id*.)

When Rockland County Executive Edwin J. Day ("Day") took control of the Republican Party, former BOE Commissioner Babcock was not reelected.  Giblin, a registered Republican Party Member and "political operative of . . . Day," was elected as a BOE Commissioner.  (SAC ¶ 39.)  Plaintiff alleges Giblin's appointment as Commissioner was approved by Day.  (*Id*. ¶ 13.)  Plaintiff further alleges Day hand picked Giblin as the Republican Commissioner to facilitate his partisan control of the Republican positions on the BOE and to allow him to employ at BOE only people who are politically loyal to him.  (*Id*. ¶ 86.)

Plaintiff alleges that Clerk III positions are not policy-making employment positions, (*id*. ¶ 11), but rather "the lowest level of employment at the BOE, and involve exercising no discretionary duties at the BOE," (*id*. ¶ 40).  Plaintiff further alleges that as a Clerk III employee he did not make rulings on any petitions, decide whether anyone was entitled to be on the ballot, or undertake any other actions that establish BOE policy.  (*Id*. ¶ 45.)  Plaintiff's duties as Clerk III were allegedly "solely ministerial," and included answering telephones, greeting people coming into the BOE office, assisting with voter registration by accepting registration forms, receiving absentee forms, taking in and sending out mail, and entering data from registration forms into BOE files.  (*Id*. ¶ 41.)  Plaintiff also distributed approved election and/or voter information to the general public and registration forms to high school classes.  (*Id*. ¶¶ 42–43.)  Plaintiff did so in a "bipartisan manner and according to the authorization and direction of the Defendant BOE, and only in the company of the other Clerk III BOE employee aligned with the opposing political party," (*id*. ¶ 43), to insure bipartisan conduct at the BOE, (*id*. ¶ 42).  Finally, Plaintiff handled a variety of election and voter-related documents for the BOE.  (*Id*. ¶ 44.)

Whenever Plaintiff handled documents requiring a determination of the BOE, he provided such document in a bi-partisan manner to the two BOE Commissioners, and only the Commissioners, not employees in the Clerk III position, could make those determinations. (*Id.*)

Outside of work, Plaintiff actively participated in the Rockland County Republican Party (the "Party"). (SAC ¶ 22.) Plaintiff associated with the Party with the active encouragement of former Republican Party Chairperson, Vincent Reda ("Reda"), (*id.* ¶ 23), who was involved in New York statewide Republican activities, (*id.* ¶ 24). Reda introduced Plaintiff to influential Republicans in Rockland and Westchester Counties and throughout New York. (*Id.* ¶ 25.) Plaintiff alleges he was willing to work with the Democratic Party and other Parties to help the Republican Party carry out its political platform in Rockland County, and that he was willing to do so in "fairness to all Rockland County Residents and [with] equal respect to all people without regard to race or religion." (*Id.* ¶ 26.)

### 2. County Policy Regarding the Orthodox and Hasidic Jewish Community

Plaintiff alleges that in response to the growth of the Orthodox and Hasidic Jewish community (the "Religious Community") in Rockland County, Day and Giblin, whom Plaintiff alleges was Day's "political protégé," adopted the practice and policy of opposing the expansion of the Religious Community within the County. (SAC ¶¶ 28–29.) Plaintiff alleges that "Day, and his Administration . . . admitted a goal and implemented a custom, policy and practice to limit and suppress the growth of the Religious Community . . . and discipline[d] those, such as Plaintiff," who did not oppose the growth of the Religious Community. (*Id.* ¶ 30.)

Plaintiff alleges that Day advised a former Rockland County Department Head that he or she should be careful not to give too much money in the Town of Ramapo as that would allow for this Religious Community to "continue growing." (*Id.* ¶ 31.) Plaintiff alleges that the

Deputy County Executive appointed by Day also advised that same Department Head with respect to the Religious Community, stating, "[w]e can't stop them, but we can and must try to slow their growth down." (*Id*. ¶ 32.)

Plaintiff alleges that "any association with, or failure to speak against that Religious Community by Plaintiff caused [] Defendants . . . to consider him as someone to be removed from any position within County government or even within the Party." (SAC ¶ 33.) Plaintiff further alleges that by "speaking out and not acting or advising of any intention to suppress this Religious Community was acting contrary to the custom, practice and policy of [] Defendants." (*Id*. ¶ 34.) Plaintiff alleges that he became a "'sacrificial lamb' that Day could offer up as an example to others who did not follow his lead on this issue." (*Id*.)

### 3.  Plaintiff Seeks Public Office

In 2013, Day allegedly orchestrated efforts to have his "hand-picked operative," Lawrence Garvey ("Garvey"), replace former Party Chair Reda as the Rockland County Republican Party Chairperson. (SAC ¶ 35.) Plaintiff alleges that Defendants acted against him because of his association with Reda. (*Id*. ¶ 37.)

In late 2015, Plaintiff sought election as a candidate in the Republican Party as a Member of the New York State Assembly for the 97th Assembly District. (*Id*. ¶ 49.) As part of that effort, Plaintiff sought professional advice regarding public communications and campaign strategy. (*Id*. ¶ 50.) Republican Party Chair, Garvey, advised Plaintiff to hire the Casale Group for campaign communications and strategy. (*Id*. ¶ 51.)

On February 11 , 2016, at the urging of Garvey, Plaintiff signed an agreement for campaign communication and strategy advice with the Casale Group. (*Id*. ¶ 52.) Plaintiff alleges that he paid considerable sums of money to the Casale Group, but that the Casale Group

failed to provide the guidance and strategy that Plaintiff needed. (*Id.* ¶ 53.) Plaintiff had limited means to continue to employ the Casale Group. (*Id.* ¶ 54.) In March 2016, Plaintiff terminated his relationship with the Casale Group. Thereafter, Garvey immediately advised Plaintiff that his termination of the Casale Group had "extremely displeased" Day. (*Id.* ¶ 55.)

Subsequently, Plaintiff hired Katie Beckmann to provide campaign advice. (SAC ¶ 56.) At the time Plaintiff hired Katie Beckmann, William Beckmann, her father, headed the Rockland County Conservative Party. (*Id.* ¶ 57.) Plaintiff alleges that Garvey "greatly disapproved" of Plaintiff's decision to hire Katie Beckmann. (*Id.* ¶ 58.) Garvey advised Plaintiff that he could not use Katie Beckman as a consultant because she was someone currently out of favor with the Party. (*Id.* ¶ 59.) Plaintiff alleges that his association with Katie Beckmann was the cause of "Plaintiff's disfavor with Defendants." (*Id.* ¶ 60.) Plaintiff alleges that his association with Reda and his hiring of Katie Beckmann caused Day to take "hostile actions" against Plaintiff. (*Id.* ¶ 61.)

### 4. Call from a "Fake Rabbi"

Shortly before the November 2016 Election, Plaintiff received a telephone call from an individual who was allegedly falsely claiming to represent a certain Jewish religious group. (SAC ¶ 62.) The person claimed to be a Rabbi. (*Id.* ¶ 63.) The "Rabbi" asked Plaintiff about his position on various issues, including regulation of schools and housing for Orthodox and Hasidic Jews. (*Id.*) Plaintiff alleges that the issues he discussed with the "Rabbi" were central to the Day Administration's attempt to suppress the growth of the Orthodox and Hasidic communities in Rockland County. (*Id.* ¶ 64.)

Soon after receiving this call Plaintiff discovered that the call was recorded without his knowledge or consent. (*Id.* ¶ 65.) Plaintiff alleges that the day before the "Rabbi" called him,

Peter Bradley ("Bradley"), who at that time was seeking elected office in the neighboring Town of Clarkstown, New York warned Plaintiff, "do not talk to anyone Jewish." (*Id*. ¶ 67.)

Within minutes of the "Rabbi" call, Garvey contacted Plaintiff and told him, "you have to know the phone call was recorded" and "it is not good." (*Id*. ¶ 68.) Plaintiff alleges that immediately thereafter, Day, who controlled the Rockland County Republican Party, withdrew his support along with his Party's support for Plaintiff's election. (*Id*. ¶ 69.) Day's son, Chris Day, Town Supervisor in Orangetown, New York, also withdrew his support from Plaintiff's campaign. (*Id*. ¶ 69.)

Plaintiff further alleges that when Day learned of Plaintiff's views expressed on the call, Day determined to separate Plaintiff from the party and the BOE. (*Id*. ¶ 70.) The recorded telephone conversation between Plaintiff and the fake "Rabbi" was allegedly distributed to others with the knowledge of Day. (*Id*. ¶ 71.) Plaintiff alleges that Chris Day was one of the people who heard that recording and that he advised Plaintiff that he subsequently pulled down all of Plaintiff's campaign signs because of the contents of the call. (*Id*. ¶ 72.)

### 5. Plaintiff's Bumper Sticker

Plaintiff lives in Orangetown, New York. (SAC ¶ 73.) In 2017, Day's son, Chris Day, was running as a Republican for the Town of Orangetown Supervisor. (*Id*. ¶ 74.) Chris Day's Democratic Party opponent was Thom Kleiner ("Kleiner"). (*Id*. ¶ 75.) During the Chris Day/Kleiner election contest, Plaintiff occasionally displayed a bumper sticker supporting Kleiner on his privately-owned vehicle. (*Id*. ¶ 76.) Plaintiff was also photographed at an event organized to assemble campaign yard signs for Kleiner. (*Id*. ¶ 77.)

After learning of Plaintiff's campaign support for Kleiner and of the recorded telephone call with the fake "Rabbi," Giblin allegedly falsely accused Plaintiff of only providing blank

registration forms to individuals who would register as Democrats. (*Id.* ¶ 78.) Giblin repeatedly made comments to Plaintiff about his affiliation with Democratic candidates during his private activities outside of his employment, and advised Plaintiff that his employment with the BOE was "not looking good." (*Id.* ¶ 79.)

### 6. Plaintiff's Termination

On April 27, 2018, Plaintiff was notified in a letter from Garvey that a Party Hearing would be held against him. (SAC ¶ 80.) Plaintiff alleges that the letter was sent at the direction of Day, because of Plaintiff's "disloyalty" to the Party. (*Id.*) The Party Hearing was cancelled, however, and on April 30, 2018, Plaintiff was terminated by Giblin. (*Id.* ¶ 81.) Plaintiff was advised by letter that his "last day of service would be April 30, 2018 at 5:00 p.m. with Rockland County" and as a result he "will be terminated" as of that date. (*Id.*)

Plaintiff alleges that his unilateral termination by Giblin was contrary to well-established New York State Law which provides that an employee of the BOE can only be terminated with the consent and approval of both BOE Commissioners. (*Id.* ¶ 82.) Plaintiff alleges that Stavisky, the other Commissioner, a registered Democrat, found nothing wrong, partisan, or improper with the employment of Plaintiff with the BOE, and therefore did not consent to or otherwise approve of Plaintiff's termination. (*Id.* ¶ 83.)

Plaintiff alleges that his termination was motivated by Defendants' desire to suppress his First Amendment rights of free speech and association. (*Id.* ¶ 87.)

B. Procedural Background

Plaintiff filed his initial Complaint on May 9, 2018. (Compl. (Dkt. No. 10).)[2] On July 26, 2018, Plaintiff filed his First Amended Complaint ("FAC"). (FAC (Dkt. No. 46).)[3] On August 14, 2018, counsel for Giblin submitted a pre-motion letter to the Court requesting permission to file a Motion To Dismiss. (*See* Letter from Lisa A. Perillo, Esq., to Court (Dkt. No. 47).) On August 15, 2018, the County and Edwin J. Day ("Day") filed their Answer to the FAC. (Dkt. No. 49.) On August 16, 2018, Staviski filed her Answer to the FAC. (Dkt. No. 50.) On August 17, 2018, counsel for Plaintiff submitted a letter opposing the County's request for a pre-motion conference. (*See* Letter from Dennis E. A. Lynch, Esq., to Court (Dkt. No. 51).)

On October 4, 2018, the Court held a pre-motion conference and instructed Plaintiff to submit a second amended complaint to address the arguments in Defendants' pre-motion letter. (*See* Dkt. (minute entry for Oct. 4, 2018).) Plaintiff filed his SAC on October 25, 2018. (SAC.) On November 5, 2018, counsel for Giblin submitted a pre-motion letter to the Court requesting permission to file a Motion To Dismiss. (*See* Letter from Lisa A. Perillo, Esq. to Court (Dkt. No. 56).) On November 7, 2018, counsel for Plaintiff submitted a letter opposing the County's request for a pre-motion conference. (*See* Letter from John G. Stepanovich, Esq., to Court (Dkt. No. 51).) On November 14, 2018, the Court held a pre-motion conference, (*see* Dkt. (minute entry for Nov. 14, 2018)), and set a briefing schedule, (Dkt. No. 61).

---

[2] Plaintiff attempted to file his Complaint on May 8, 2018, but did so in deficient form such that the filing was rejected by ECF. (*See* Dkt Nos. 1–7.)

[3] Plaintiff attempted to file his FAC on July 28, 2018, (Dkt. No. 43), July 20, 2018, (Dkt. No. 44), and on July 24, 2018, (Dkt. No. 45), but did so in deficient form such that the filing was rejected by ECF.

On January 8, 2019, the County filed its Motion To Dismiss. (County Not. of Mot.; County's Mem. of Law in Supp. of Mot. To Dismiss ("County's Mem.") (Dkt. No. 67).) On January 9, 2019, Giblin filed her Motion To Dismiss. (Giblin Not. of Mot.; Giblin's Mem. of Law in Supp. of Mot. To Dismiss ("Giblin's Mem.") (Dkt. No. 73).)

On January 9, 2019, Plaintiff filed his Opposition to Giblin's Motion, (*see* Pl.'s Mem. of Law in Opp'n to County's Mot. To Dismiss ("Pl.'s Mem. re Giblin") (Dkt. No. 74)), and to the County's Motion, (*see* Pl.'s Mem. of Law in Opp'n to County's Mot. To Dismiss ("Pl.'s Mem. re County") (Dkt. No. 75)).

Giblin filed her Reply in Further Support of her Motion To Dismiss on January 30, 2019. (*See* Giblin's Mem. of Law in Further Supp. of Mot. To Dismiss ("Giblin's Reply") (Dkt. No. 76).) The County filed its Reply that same day. (*See* County's Mem. of Law in Further Supp. of Mot. To Dismiss ("County's Reply") (Dkt. No. 77).) On January 31, 2019, Staviski joined the other Defendants' Motions. (Dkt. No. 79.)

II.  Analysis

A.  Standard of Review

The County moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (County Not. of Mot.) Giblin moves to dismiss the SAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Giblin Not. of Mot.) "The standards of review under Rules 12(b)(1) and 12(b)(6) . . . are substantively identical." *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the

plaintiff." *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citation and quotation marks omitted).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Lerner*, 318 F.3d at 128); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (citation and quotation marks omitted)).  This allocation of the burden of proof is the "only substantive difference" between the standards of review under these two rules.  *Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009).

1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998))).  "In adjudicating a

motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings." *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### 2. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.

Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B.  First Amendment Retaliation

Plaintiff alleges that Defendants violated his First Amendment rights to free speech and association, as applied to the states through the Fourteenth Amendment, by terminating him in retaliation for his exercise of his First Amendment rights. (Pl.'s Mem. re Giblin 9–14); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996) (holding that a state violated the First Amendment "as made applicable to the States by the Due Process Clause of the Fourteenth Amendment").[4] Defendants argue that Plaintiff fails to state a retaliation claim because he does not allege a sufficient causal connection between the protected activity and the adverse employment action. (County Mem. 4–7; Giblin Mem. 12–14.)

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially

---

[4] Plaintiff states that he does not bring a separate Fourteenth Amendment Due Process claim, but that he is raising his "rights to freedom of speech and associational freedom guaranteed by the First and Fourteenth Amendments." (Pl.'s Mem. re Giblin 9.) The Court therefore need not consider Giblin's separate argument that Plaintiff does not state a Fourteenth Amendment Due Process claim, (Giblin Mem. 17–18.)

caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). "To establish a causal connection sufficient to survive a motion to dismiss, the 'allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Kempkes v. Downey*, No. 07-CV-1298, 2008 WL 852765, at *3 (S.D.N.Y. Mar. 31, 2008) (quoting *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)). "[A] direct showing requires plaintiff to provide tangible proof of retaliatory animus, [and] conclusory assertions of retaliatory motive are insufficient." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118–19 (2d Cir. 2015) (quotation marks omitted); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999) ("[T]he plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect."). In addition to direct evidence of retaliatory animus, a plaintiff may establish causation indirectly. "Circumstantial evidence, such as a showing that the protected activity was followed closely in time by adverse employment treatment, is sufficient to support such an inference." *Kempkes*, 2008 WL 852765, at *3 (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)); *see also Morey v. Somers Cent. Sch. Dist.*, No. 06-CV-1877, 2007 WL 867203, at *12 (S.D.N.Y. Mar. 21, 2007) (holding that allegations of protected speech followed two months later by disciplinary charges showed sufficiently "close temporal proximity" to support inference). There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), so courts determine "the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Here, Plaintiff does not rely on temporal proximity alone to establish a causal inference. It is true that the hiring of Katie Beckman and the call from the "fake Rabbi" occurred prior to the November 2016 election—at least seventeen months before Plaintiff's employment was terminated in April 2018. (SAC ¶¶ 55, 58–59, 62.) And it is true that the seventeen-month gap between the protected speech and activities and Plaintiff's termination alone would not plausibly establish an inference of causal connection. *See Raymond v. City of New York*, 317 F. Supp. 3d 746, 769 (S.D.N.Y. 2018) (holding that a ten-month gap between the protected activity and the adverse action was "a length of time which does not allow an inference of causation," where there was no other evidence of retaliatory animus (citation and quotation marks omitted)); *Johnson v. NYS Office of Alcoholism & Substance Abuse Servs.*, No. 16-CV-9769, 2018 WL 1353258, at *5 (S.D.N.Y. March 13, 2018) (holding that a period of "more than nine months" between the protected activity and the adverse actions is "a temporal gap that is too remote, *by itself*, to raise an inference of but-for causation") (emphasis added)). However, Plaintiff also alleges that he displayed the Kleiner bumper sticker and was photographed at a Kleiner campaign event ahead of the 2017 election, (SAC ¶¶ 76–77), which, drawing all reasonable inferences in Plaintiff's favor, occurred in November 2017 at the latest—five months before Plaintiff's April 2018 termination. Plaintiff makes other allegations connecting the events of November 2016 and November 2017. For example, Plaintiff alleges that his association with Katie Beckman led him to fall out of favor with Defendants and Day to take hostile actions against him. (*Id.* ¶¶ 60–61.) Plaintiff alleges that the fake "Rabbi" call led Day and his son to withdraw their support from Plaintiff's campaign, (*id.* ¶ 69), and that it caused Day to decide to separate Plaintiff from the party and BOE, (*id.* ¶ 70). Day also allegedly had a part in distributing the recorded call. (*Id.* ¶ 71.) As for Giblin, after she learned of Plaintiff's support

for Kleiner and of the call with the fake "Rabbi," she allegedly falsely accused Plaintiff of only providing blank registration forms to individuals who would register as Democrats, (*id*. ¶ 78), repeatedly made comments to Plaintiff about his affiliation with Democratic candidates, and advised Plaintiff that his employment with the BOE was "not looking good," (*id*. ¶ 79). Ultimately, on April 27, 2018, Plaintiff was notified by letter, allegedly sent to him at Day's direction, that a Party hearing would be held against Plaintiff because of his "disloyalty" to the Party. (*Id*. ¶ 80.) Giblin terminated Plaintiff on April 30, 2018. (*Id*. ¶ 81.) Plaintiff alleges that Day and Giblin's conduct was connected because Giblin was Day's "political protégé," (*id*. ¶¶ 28–29), Giblin's appointment as Commissioner was approved by Day, (*id*. ¶ 13), and Giblin was hand-picked by Day to facilitate his control of the BOE to allow him to employ only people who are politically loyal to him, (*id*. ¶ 86).

Thus, Plaintiff does not rely on temporal proximity alone, but alleges a course of conduct and pointed comments by Day, as County Executive, and Giblin, over the course of seventeen months, and up to five months before Plaintiff's termination, criticizing Plaintiff's political speech and activities and threatening his employment with the BOE.[5] Courts in the Second

---

[5] The County argues that the temporal gap between Plaintiff's protected activity and his termination is too great for him to state a retaliation claim. However, the County cites cases in which plaintiffs relied on temporal proximity alone and did not allege or offer evidence of retaliatory animus. (County's Mem. 5–6 (citing *inter alia Preuss v. Kolmar Labs., Inc*., 970 F. Supp. 2d 171, 198 (S.D.N.Y. 2013) (finding a period of three months to be "not sufficiently close to establish a causal connection," where plaintiff presented no other evidence of retaliatory animus); *Walcott v. Cablevision*, No. 10-CV-2602, 2012 WL 4447417, at *14–16 (E.D.N.Y. Sept. 24, 2012) (holding that "a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation" where plaintiff provided no other evidence of retaliation (citations omitted)).) As explained above, Plaintiff here does not rely on temporal proximity alone. Plaintiff also correctly points out that many of the cases Giblin cites were in a different procedural posture in that they discussed retaliation claims at the summary judgment stage. (Pl.'s Mem. re Giblin 10.) At the pleading stage it "is sufficient to allege facts which could reasonably support an inference to that effect." *Posr*, 180 F.3d at 418.

Circuit have found that "[a] seven or eight month gap between a plaintiff's protected activity and the adverse action can support an inference of causation where other circumstances bolster the otherwise attenuated connection between the protected activity and the retaliatory action." *Quarless v. Brooklyn Botanic Garden Corp*., No. 11-CV-5684, 2014 WL 2767085, at *6 (E.D.N.Y. June 18, 2014) (citing *Summa v. Hofstra Univ*., 708 F.3d 115, 128–29 (2d Cir. 2013)), *aff'd*, 611 F. App'x 28 (2d Cir. 2015); *see also Richardson v. N.Y. State Dep't of Corr. Serv*., 180 F.3d 426, 446–47 (2d Cir. 1999) (holding abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit approximately one year earlier), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 56 (2006); *Grant v. Bethlehem Steel Corp*., 622 F.2d 43, 45–46 (2d Cir. 1980) (holding that more than an eight-month gap between the filing of an EEOC complaint and a retaliatory action suggested a causal relationship).

Plaintiff sets forth, albeit thin, allegations of discriminatory intent, such as statements to Plaintiff warning him against hiring Katie Beckman, (SAC ¶¶ 55, 58–59), statements warning Plaintiff that the "Rabbi" call was "not good," (*id.* ¶ 68), withdrawal of support for Plaintiff's campaign after the "Rabbi" call, (*id.* ¶ 69), the distribution of the recorded "Rabbi" call, (*id.* ¶ 70), accusations against Plaintiff of withholding voter registration forms, and statements that Plaintiff's employment with BOE was "not looking good," (*id.* ¶¶ 78–79). These allegations plausibly support an inference that there may indeed have been a retaliatory motive for Plaintiff's termination. *See Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994) ("The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint."); *Costello v. Town of Huntington*, No. 14-CV-2061, 2015 WL 1396448, at *10 (E.D.N.Y. Mar. 25, 2015) (holding that "the question of an actor's motive [in

First Amendment retaliation cases] is generally a question of fact that should not be decided in the context of a motion to dismiss"); *see also Dangler v. N.Y.C. Off Track Betting Corp*., 193 F.3d 130, 142 (2d Cir. 1999) (denying motion to dismiss First Amendment retaliation claim where supervisor threatened to fire employee because he was not a "team player"); *Costa v. Sears Home Imp. Products, Inc*., 65 F. Supp. 3d 333, 351–52 (W.D.N.Y. 2014) (finding manager's statements that "the company did not like loose lips" were evidence of retaliatory animus); *Vosburgh v. Am. Nat'l Red Cross*, No. 08-CV-653, 2014 WL 4826688, at *11–12 (N.D.N.Y. Sept. 29, 2014) (finding supervisor's statement that "even high achievers could be terminated if they were not good team players" evidence of "impermissible retaliation").

Accordingly, Defendants' Motions are denied with respect to Plaintiff's First Amendment retaliation claim.[6]

---

[6] Giblin argues that even if Plaintiff states a viable retaliation claim, the "policymaker" exception applies so that political affiliation is a permissible requirement for the Clerk III position and Plaintiff's termination are appropriate. (Giblin Mem. 16–17.) A "policymaker" is a government employee who occupies a position for which party affiliation, loyalty, or confidence are appropriate requirements. *Regan v. Boogertman*, 984 F.2d 577, 580 (2d Cir. 1993). Policymakers hold their office at the will of their employer, and may be discharged by reason of political affiliations, political beliefs, ideological viewpoints, or partisan activity. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 71 n. 5 (1990). The Second Circuit has identified several factors to consider in deciding whether a position is one calling for party loyalty. *Vezzetti v. Pellegrini*, 22 F.3d 483, 486 (2nd Cir. 1994). Those factors include, "whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders." *Id*. (citing *Regan*, 984 F.2d at 579–80).

Plaintiff correctly points out that the cases Giblin cites also hold that the government entity or hiring authority has the burden of justifying a dismissal based on party affiliation. (Pl.'s Mem. re Giblin 16–18 (citing *inter alia Branti v. Finkel*, 445 U.S. 507, 518 (1980) (finding that the policymaker exception applied where it was demonstrated that party affiliation was an appropriate requirement for the performance of the position, and that "the ultimate inquiry . . . is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved"); *Elrod v. Burns*. 427 U.S. 347, 368–72 (1976) (holding that the "policymaker" exception precluded plaintiff's First Amendment

C.  State Law Claims

Giblin argues that Plaintiff's state law claims should be dismissed because Plaintiff fails

to allege that he timely served a notice of claim upon Defendants.  (Giblin Mem. 11–12, 21–22;

Giblin Reply 7.)

"State claims brought under state law in federal court are subject to state procedural

rules."  *Russell v. Westchester Cmty. Coll.*, No. 16-CV-1712, 2017 WL 4326545, at *5 (S.D.N.Y.

Sept. 27, 2017) (ultimately citing *Felder v. Casey*, 487 U.S. 131, 141 (1988)).  As such, New

York County Law § 52 applies in this case and provides that

> [a]ny claim or notice of claim against a county . . .  for damages arising at law or in
> equity, alleged to have been caused in whole or in part by or because of any
> misfeasance, omission of duty, negligence, or wrongful act on the part of the

---

claim but stating that the government, not the dismissed employee, bears the burden of justifying a patronage dismissal); *Kaluczky v. City of White Pains*, 57 F.3d 202, 208 (2d Cir. 1995) (stating that policymakers may be discharged for political affiliations and partisan activity but that the "government entity must demonstrate a compelling interest to justify any infringement of an employee's First Amendment rights") (citations and quotation marks and citations omitted)). The Court further notes that the cases Giblin cites were decided at the summary judgment stage, and involved government entities having introduced evidence as to the grounds for terminating the plaintiffs in those cases.  (Giblin Mem. 15 (citing *inter alia Millus v. D 'Angelo*, 224 F.3d 137, 137–38 (2d Cir. 2000) (holding that party disloyalty was an appropriate grounds for terminating a board of elections employee, where at the summary judgment stage defendants presented evidence that party affiliation was an appropriate job requirement and that plaintiff had been disloyal to her party); *Castine v. Zurlo*, 756 F.3d 171, 177–78 (2d Cir. 2014) (affirming summary judgment for defendants and holding that adverse employment actions were permissible where county offered evidence that its efforts to prevent conflicts of interest on its board of elections was necessary to preserving the integrity of the board of elections)).

Giblin does not, and cannot, at this stage, meet her burden of proving that Plaintiff was dismissed on permissible grounds.  It is not at all clear from the face of Plaintiff's SAC that the Clerk III position is a policymaker position or that Plaintiff was disloyal to his party.  The Court thus cannot at this stage decide whether the policymaker exception applies, and will not dismiss Plaintiff's SAC on this ground.  *See Krause v. Buffallo and Erie Cnty. Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 104–05 (W.D.N.Y. 2005) (stating that plaintiffs bear the burden of proving the affirmative defense that plaintiff's position was a policymaking position not protected from retaliation, and that plaintiff did not at the pleading stage have to allege that the position was not a policymaking position (citations omitted)), *affirming order*, 425 F. Supp. 2d 352 (W.D.N.Y. 2006)).  Giblin may renew this argument once discovery has been had in this case.  The County notably does not raise this argument.

county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

N.Y. Cnty. Law § 52. Section 52 incorporates the notice of claim requirements contained in New York General Municipal Law §§ 50–e and 50–i. *Id.* Section 50–e requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. *See* N.Y. Gen. Mun. § 50-e. Pursuant to § 50–i, "[a] plaintiff must plead in the complaint that: (1) the Notice of Claim was served; (2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y.2006) (citing N.Y. Gen. Mun. § 50). The plaintiff bears the burden of demonstrating compliance with the notice of claim requirement. *See Rattner v. Planning Comm'n of Vill. of Pleasantville*, 548 N.Y.S.2d 943, 948 (App. Div. 1989), *appeal dismissed* 75 N.Y.2d 897 (N.Y. 1990).

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp*., 164 F.3d 789, 793–94 (2d Cir. 1999) (citations and quotation marks omitted); *see Horvath*, 423 F. Supp. 2d at 423 ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action." (internal quotation omitted)). Accordingly, for the state law claims asserted in this case, "the failure to file a notice of claim is fatal unless the action has been brought in the public interest, such as a class action brought to protect civil rights, or a court has granted leave to serve late notice." *Pustilnik v. Hynes*, No. 99-CV-4087, 2000 WL 914629, at *6 (E.D.N.Y. June 27, 2000) (citing *Mills v. Monroe County*, 451 N.E.2d 456 (N.Y. 1983), *cert. denied* 464 U.S. 1018 (1983)). Plaintiff does not argue that either of these exceptions applies.

Plaintiff does not allege in his SAC, or in his Opposition, that he served a notice of claim upon Defendants. As such, Plaintiff's state law claims must be dismissed.[7] *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 709–10 (S.D.N.Y. 2011) (dismissing New York State constitutional claims for failure to comply with notice requirements); *Alexander v. City of New York*, No. 02-CV-3555, 2004 WL 1907432, at *22 (S.D.N.Y. Aug. 25, 2004) (holding that the New York notice of claim requirement applies to actions founded upon violations of state constitutional provisions).[8, 9]

---

[7] In his Opposition, Plaintiff does not argue that he filed the appropriate notices, or that the notice requirement does not apply to New York constitutional and election law claims, but instead argues that the notice requirement does not apply where a plaintiff seeks primarily equitable relief. (Pl.'s Mem. re Giblin 21–22.) Giblin correctly points out, however, that the cases Plaintiff cites do not address N.Y. County Law § 52 and do not involve claims against a county or its officers, (Giblin Reply 7–8), and that the § 52 notice requirement applies not only to actions for equitable relief, but specifically to claims for "damages arising at law or in equity." *Jordan v. Cnty. of Chemung*, 264 F. Supp. 3d 497, 523–25 (W.D.N.Y. 2017) (quoting and applying N.Y. County Law § 52 notice requirement to claims for money damages); *Russell*, 2017 WL 4326545, at *5–6 (same). Thus, Plaintiff's argument that the § 52 notice requirement does not apply here because he is seeking injunctive relief fails.

[8] Giblin also summarily argues that Plaintiff's claim for declaratory and injunctive relief is redundant and fails even if it is not redundant. (Giblin Mem. 22.) Giblin cites only a few cases of dubious relevance and does not apply them meaningfully to the facts of this case. "Courts need not consider cursory arguments of this kind, and the Court declines to do so here." *Grant v. City of Syracuse*, No. 15-CV-445, 2017 WL 5564605, at *12 n.12 (N.D.N.Y. 2017) (citation, alterations, and quotation marks omitted).

[9] Giblin also argues that she is entitled to qualified immunity because "all that is alleged" against her is that she terminated Plaintiff, that this was in the scope of her authority, and that she did not violate any clearly established rights. (Giblin Mem. 24; Giblin Reply 9–10.) Not only does this misstate Plaintiff's allegations, it is insufficient to raise a qualified immunity claim at this stage. *See Brown v. Halpin*, 885 F.3d 111, 117 (2d Cir. 2018) ("A defendant presenting an immunity defense on a motion to dismiss must . . . show not only that 'the facts supporting the defense appear on the face of the complaint,' but also that 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"); *Johnson v. Doty*, No. 15-CV-7823, 2019 WL 2137361, at *3 n.4 (S.D.N.Y. May 16, 2019) (declining to consider qualified immunity argument where defendants "merely restate[d] the qualified immunity caselaw without meaningfully applying that caselaw to the facts of th[e] case"); *Ben-Reuben v. Westchester County*, No. 17-CV-9156, 2019 WL 1406868, at *4 n.1

To the extent that Plaintiff's claims against Giblin and Stavisky are asserted against them in their official capacity, the claims are redundant of those asserted against the BOE and the County.  *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) (holding that official-capacity suits represent only another way of pleading an action against the entity of which the officer is an agent); *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012) (finding that it is duplicative to name both a government entity and the entity's employees in their official capacity because a suit against employees in their official capacity is a suit against the entity); *see also Henning v. N.Y.C. Dep't of Corr.*, No. 14-CV-9798, 2016 WL 297725, at *1 (S.D.N.Y. Jan. 22, 2016) (dismissing claims against individual defendants in their *official capacities* where plaintiff failed to state a claim under *Monell* against the entity of which the individuals were agents).  Accordingly, the claims asserted against Giblin in her official capacity are dismissed.  Plaintiff only sues Stavisky in her official capacity as Commissioner and therefore she is wholly dismissed from the case.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' Motions To Dismiss with respect to Plaintiff's state law claims and denies Defendants' Motions with respect to Plaintiff's First Amendment retaliation claim.  The Court dismisses Stavisky from the case and dismisses the claims against Giblin in her official capacity.

The claims that are dismissed are dismissed with prejudice, as Plaintiff has already twice amended, including in response to Defendants' pre-motion letters raising the arguments

---

(S.D.N.Y. Mar. 28, 2019) (same); *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *19 n.17 (S.D.N.Y. Dec. 21, 2018) (same).

addressed in the instant Opinion, and based on conversations with opposing counsel and the

Court during conferences. *Justice v. McGovern*, No. 11-CV-5076, 2013 WL 1809634, at \*3

(E.D.N.Y. Apr. 29, 2013) ("Although when a motion to dismiss is granted, the usual practice is

to grant leave to amend the complaint, when the plaintiff is put on notice of the deficiencies in

his complaint and fails to correct them in the amended complaint[,] dismissal with prejudice is

proper" (citation, some alterations, and quotation marks omitted)); *Tyler v. Liz Claiborne, Inc.*,

814 F. Supp. 2d 323, 344 (S.D.N.Y. 2011) ("[A]s plaintiff has already amended his complaint

twice, dismissal with prejudice is appropriate at this stage in the litigation." (citation omitted)).[10]

     The Clerk of Court is respectfully direct to terminate the pending Motions. (Dkt. Nos.

64, 71.) The Court will hold a Status Conference on September 11, 2019 at 2:00pm.

SO ORDERED.

Dated:    July **25**, 2019
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff does not dispute that he did not file a notice of claim for his state law claims and that at this stage any notice of claim would be untimely. Plaintiff also does not seek leave to file a late notice of claim, wisely, because "this Court does not have jurisdiction to grant permission to serve a late notice of claim," *In re Dayton*, 786 F. Supp. 2d 809, 827–28 (S.D.N.Y. 2011), and "even if this Court had jurisdiction to entertain Plaintiff's application to file a late notice of claim, the application would not be successful because it is untimely," *Dodson v. Bd. of. Ed. of the Valley Stream Union Free School Distr.*, 44 F. Supp. 3d 240, 249–50 (E.D.N.Y. 2014). An application for leave to file a late notice of claim must be made within one year and ninety days after the cause of action has accrued. *See Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 259 (S.D.N.Y.1989) (citing Pierson v. City of N.Y., 439 N.E.2d 331, 332 (N.Y. 1982)). Therefore Plaintiff's state law claims are also dismissed with prejudice. *See Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196–98 (S.D.N.Y. 2006) (dismissing state law claims with prejudice where plaintiff failed to file a notice of claim within the statute of limitations under state law).

23